# In the United States Court of Federal Claims

No. 18-1804C
Filed: January 25, 2021
NOT FOR PUBLICATION

**LINDA CRAWLEY, LIP CHEN, MARTA ELIZABETH LOPEZ, EVELYN SHERMAN, HEATHER GUTENSOHN, MELANIE CHRISTIAN, JOSEPH HICKS, JENNY B. REDMOND, and SAJITHA NATHAN, on behalf of themselves and all others similarly situated,**

　　　　　　*Plaintiffs*,

v.

**UNITED STATES,**

　　　　　　*Defendant*.

*Ira M. Lechner*, Washington, D.C., for the plaintiffs.

*Joseph A. Pixley*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Kendall Rocio*, U.S. Department of Veterans Affairs, of counsel, for the defendant.

### MEMORANDUM OPINION AND ORDER

**HERTLING**, Judge

　　　　The plaintiffs seek to recover back pay and interest for night-premium pay allegedly not paid by the United States, acting through the Department of Veterans Affairs ("VA"). The named plaintiffs are registered nurses ("RNs") from the VA Medical Center in Richmond, Virginia, and hybrid health-care workers from the VA Medical Center in Hines, Illinois.[1] They seek to represent other VA employees similarly situated.

---

[1] "Hybrid" refers to VA employees from various allied health professions. *Curry v. United States*, 66 Fed. Cl. 593, 595 (2005). These employees are called "hybrid" because they are governed in some respects by provisions of Title 38 of the U.S. Code and in other respects by provisions of Title 5. *Id.* at 595 n.4.

The plaintiffs have moved for class certification under Rule 23 of the Rules of the Court of Federal Claims ("RCFC"), approval of a postcard providing notice to putative class members, approval of the official class notice, appointment of Ira M. Lechner as class counsel, and appointment of Epiq Class Actions & Claims Solutions, Inc. as class-action administrator. They have also moved for an order compelling the defendant to produce under seal identifying information of potential putative class members in various categories.

Because the plaintiffs have failed to meet their burden under RCFC 23, the Court denies the plaintiffs' motion for class certification. The motion is denied with prejudice with respect to (1) the proposed class based on the Hines plaintiffs' claim, (2) the proposed national class based on either the Hines or Richmond plaintiffs' claims, and (3) the proposed class based on general schedule VA employees. The motion is denied without prejudice regarding the proposed class based on the Richmond plaintiffs' claim, limited to potential plaintiffs at the Richmond facility.

## I. BACKGROUND

The plaintiffs allege that the VA did not pay them the differential night-premium pay to which they were entitled. They seek back pay and interest pursuant to 5 U.S.C. § 5596 (the Back Pay Act); 5 U.S.C. § 6303, *et seq.* (the leave-with-pay statutes); and 38 U.S.C. §§ 7453(b), 7454(b)(1). The Richmond plaintiffs—Heather Gutensohn, Melanie Christian, Joseph Hicks, Jenny B. Redmond, and Sajitha Nathan—are employed as RNs at the VA Medical Center in Richmond, Virginia. (ECF 1, ¶ 8.) The Hines plaintiffs—Linda Crawley, Lip Chen, Marta Elizabeth Lopez, and Evelyn Sherman—are employed as hybrid employees at the VA Medical Center in Hines, Illinois. (*Id.* ¶ 7.) The plaintiffs from both the Richmond and Hines facilities seek to represent putative classes of similarly situated VA employees at both their own facilities and other VA medical facilities.

### A. Legal Background

Title 5 and Title 38 of the U.S. Code provide two forms of night-premium pay for certain federal employees. Title 5 entitles a federal employee who is regularly scheduled to work between the hours of 6:00 p.m. and 6:00 a.m. to receive differential night-premium pay while on paid leave when the total amount of paid leave is less than eight hours. 5 U.S.C. § 5545(a). Title 38 entitles a nurse performing a service, any part of which is within the period between 6:00 p.m. and 6:00 a.m., to receive additional pay for each hour of such service at a rate equal to 10 percent of the nurse's hourly rate of basic pay if at least four hours of such service fall between 6:00 p.m. and 6:00 a.m. 38 U.S.C. § 7453(b).

Section 7453 also provides the Secretary of Veterans Affairs with the discretion to increase the rates of night-differential pay. *Id.* § 7453(j). Under another provision of Title 38, the Secretary also may authorize, "on a nationwide, local, or other geographic basis," additional pay to non-nurse VA employees "on the same basis as provided for nurses in section 7453 . . . ." *Id.* § 7454(b)(1).

### B.    Richmond Plaintiffs

In 2007, the Medical Center Director of the Richmond VA Medical Center approved a request to pay Licensed Practical Nurses ("LPNs") premium pay on the same basis as RNs and approved an increase in the night-premium pay of RNs and LPNs from 10 percent to 14 percent. (ECF 53, Ex. B.)

The Richmond plaintiffs allege that, since November 23, 2012, they have not received payment of night-premium pay at the rate of 14 percent when they have been regularly scheduled to work tours of duty between 6:00 p.m. and 6:00 a.m. (and contiguous hours), on overtime during those hours, or on holidays.[2] (ECF 1, ¶¶ 3, 8.)

The VA identified a total of 1,907 RNs and LPNs who were eligible for the approved 14 percent night-premium pay differential at the Richmond VA facility.  (ECF 53, Ex. C at 4-5.)  Of those eligible, 795 RNs and LPNs were paid the 10 percent pay differential, instead of the 14 percent.  (*Id.* at 5.)  A VA management analyst found that the difference was "due to personnel actions that changed employee records due to promotion, job change, and[/]or general adjustments."  (*Id.*)  In an interrogatory response, the defendant also identified 366 Richmond RNs or LPNs who were not paid any differential night-premium pay for regularly scheduled work at night.[3]  (ECF 62, Ex. 5 at 4.)

### C.    Hines Plaintiffs

The Hines plaintiffs allege that, since November 23, 2012, when they used authorized and accrued leave during nighttime hours, their pay did not include an amount equal to the additional pay they would have received while working scheduled tours of duty between 6:00 p.m. and 6:00 a.m. (and contiguous hours).  (ECF 1, ¶ 7.)

In 2019, the defendant moved under RCFC 12(b)(1) and (b)(6) to dismiss the Hines plaintiffs' claims on two grounds: (1) 38 U.S.C. § 7454(b)(1) is not money-mandating; and (2) the plaintiffs failed to allege that the VA had approved them for premium pay on the same basis as RNs under Title 38.  (ECF 34.)  At oral argument on the defendant's motion, the plaintiffs clarified that the Hines plaintiffs' backpay claims for night-premium pay do not arise under Title 38 and are only for periods of authorized paid leave.  (*See* ECF 41.)  They allege entitlement to this pay under Title 5's leave-with-pay statutes, which, they argue, are money-mandating.  The

---

[2] There is no apparent significance to the date November 23, 2012.  The plaintiffs filed their complaint on November 26, 2018, so it appears that the date may be intended to keep the claims within the six-year statute of limitations (though exceeding it by three days).  (*See* ECF 62 at 7-8.)

[3] The defendant objected to the plaintiffs' use of the phrase "regularly scheduled" because it was neither "defined nor apparently relevant or proportional to the Title 38 claims at issue." (ECF 62, Ex. 5 at 4.)

defendant agreed that the relevant Title 5 provisions are money-mandating. Accordingly, the Court denied the defendant's motion to dismiss. (*Id.*)

In an interrogatory, the plaintiffs asked the defendant to identify the total number of Hines, Illinois hybrid employees who were not paid 10 percent night-premium pay for accrued and authorized paid leave at night, "including any contiguous hours if the majority of the scheduled hours on the shift exceeded four (4) hours between 6 p.m. to 6 a.m." (ECF 62, Ex. 5 at 3.) The defendant identified 237 individuals in response to that interrogatory. (*Id.*)

## II.  DISCUSSION

The plaintiffs have moved to certify subclasses based on two categories of affected employees: (1) hybrid employees similarly situated to the Hines plaintiffs, and (2) RNs and LPNs similarly situated to the Richmond plaintiffs. (ECF 50, *amended by* ECF 62.[4]) The plaintiffs have also moved to certify another subclass consisting of general schedule employees at the VA who were allegedly not paid the proper night-premium pay. (*Id.*) The defendant has opposed the plaintiffs' motion, arguing that: (1) the named Hines plaintiffs were in fact paid the premium pay to which they were entitled under Title 5, so they cannot be representative of a putative class; (2) class status is inappropriate and unnecessary for the Richmond plaintiffs because the VA has identified all potential claimants at the Richmond facility; (3) the Richmond plaintiffs failed to establish that they meet the requirements of RCFC 23; and (4) the Richmond plaintiffs failed to show that the pay discrepancies they experienced are systemic to the entire VA healthcare system. (ECF 53.)

The motion has been fully briefed, and the Court determines that oral argument would not assist in the resolution of the motion.[5]

### A.   RCFC 23 - Class Action Certification

RCFC 23 establishes the requirements for this Court to certify an opt-in class. *See* RCFC 23(a)-(b). This court has summarized RCFC 23's provisions as imposing five requirements:

> (i) **numerosity**—a class so large that joinder is impracticable; (ii) **commonality**—in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality**—that the named parties' claims are typic of the class; (iv)

---

[4] The Court considers the plaintiffs' amended motion (ECF 62) as the operative motion.

[5] After briefing was complete, the plaintiffs requested the Court hold oral argument. (ECF 64.) If the underlying motion under RCFC 23 presented a close question, the Court would on its own have scheduled oral argument, but the plaintiffs' motion is so patently inadequate that oral argument would simply waste the parties' and the Court's time. The motion for oral argument is denied.

> **adequacy**—relating to fair representation; and (v) **superiority**—that a class action is the fairest and most efficient way to resolve a given set of controversies.

*Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005) (bold in original).

Although there are differences between RCFC 23 and Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), this court may rely on decisions from both this court and other federal courts, interpreting FRCP 23, to construe RCFC 23 because much of the language is identical. *See Horvath v. United States,* 149 Fed. Cl. 735, 743 n.4 (2020); *Barnes,* 68 Fed. Cl. at 494 n.1. The plaintiffs bear the burden of establishing RCFC 23's requirements, and they must demonstrate that all five requirements are satisfied for the court to certify a class. *Mercier v. United States*, 138 Fed. Cl. 265, 270 (2018).

Despite having the burden of establishing all five of RCFC 23's requirements, much of the plaintiffs' argument amounts to assertions that the requirements have been met.

The plaintiffs' complaint alleges that class status is appropriate by asserting that the requirements of RCFC 23 are satisfied without providing the necessary factual support and legal analysis to enable the Court to determine that the requirements are indeed satisfied. (*See* ECF 1, ¶¶ 15-22.) The allegations in the complaint are not supported by facts derived from discovery or another source and are not informed by and do not address the defendant's response to the plaintiffs' interrogatories, the defendant's argument in its opposition brief, or the defendant's exhibits submitted with its opposition brief.

Aside from a discussion of numerosity in their briefs and supporting declaration, the *entirety* of the plaintiffs' RCFC 23 analysis in their motion for class certification is the following:

> Plaintiffs respectfully submit, in accord RCFC 23(a) and (b), that the potential class is so numerous that joinder of all members is impracticable; that the class action is manageable; that the Plaintiffs' claims are typical of the claims of the rest of the class; that Defendant has admitted that it acted or refused to act on grounds generally applicable to the class; that the questions of law or fact common to the members of the class predominate over any question affecting only individual members; that a class action is superior to other available methods for the fair and efficient adjudication of the controversy; that the Plaintiffs, and the attorney representing the class, will fairly and adequately represent the interests of the class; and that the prerequisites to the certification of a class action and the maintainability of the class action have been satisfied pursuant to RCFC 23(a) and (b).

(ECF 62 at 3.)

The plaintiffs make no effort to apply the facts derived through class discovery to the legal standards for each prong of RCFC 23. The "submission" that the requirements of RCFC 23 are met does not satisfy the plaintiffs' burden. The burden of establishing entitlement to a class rests solely with the plaintiffs, and it is neither the defendant's nor the Court's role to parse, analyze, or rebut generalized assertions in the context of addressing a motion under RCFC 23. The easiest response would be simply to deny the motion without prejudice. The defendant's opposition, however, enables the Court to determine that portions of the plaintiffs' motion must be denied with prejudice.

### B. Hines Plaintiffs

The named Hines plaintiffs are hybrid employees. They seek to represent other hybrid employees who, when they used authorized and accrued leave during nighttime hours, were not paid an amount equal to the additional pay they would have received while working scheduled tours of duty between 6:00 p.m. and 6:00 a.m. (and contiguous hours).

The plaintiffs contend that the defendant admitted in response to an interrogatory that the Hines plaintiffs were not paid the authorized night premium when they used authorized paid leave in place of working scheduled night shifts. During class discovery, the plaintiffs asked the defendant to identify the total number of Hines hybrid employees who were not paid 10 percent night-premium pay for accrued and authorized paid leave at night, "including any contiguous hours if the majority of the scheduled hours on the shift exceeded four (4) hours between 6 p.m. to 6 a.m." (ECF 62, Ex. 5 at 3.) In response to that interrogatory, the defendant identified 237 individuals. (*Id.*)

In its opposition to the plaintiffs' motion, the defendant has clarified that it did not admit that those 237 individuals were not paid properly. (ECF 53 at 9.) Instead, the plaintiffs' interrogatories caused confusion because the interrogatories do not make a distinction between the two types of premium pay under Titles 5 and 38. Title 5 applies to pay periods of "less than 8 hours," 5 U.S.C. § 5545(a)(2) (the so-called "8-hour rule"), and Title 38 applies to pay periods of "at least four hours," 38 U.S.C. § 7453(b). The plaintiffs' interrogatory—in specifying shifts exceeding four hours—confuses Title 38 with Title 5. The defendant's response, therefore, includes periods exceeding eight hours, and such periods are beyond the scope of Title 5's authority. The number of employees fitting the plaintiffs' interrogatory is thus not an account of employees improperly paid under Title 5.

The plaintiffs argue that the 8-hour rule in 5 U.S.C. § 5545(a)(2) does not apply to the hybrid employees at the Hines VA facility, and that the Hines facility applied the limitation in error. (ECF 59 at 17-27.) In *Curry v. United States*, 66 Fed. Cl. 593, 602 (2005), Judge Wolski held that the hybrid-employee plaintiffs in that case were not subject to the 8-hour rule because the Title 5 provisions cannot supersede or override Title 38, whose pay provisions do not have the 8-hour rule. *See also* 38 U.S.C. § 7425(b) (providing that no provision of Title 5 shall supersede, override, or otherwise modify Title 38). On the authority of *Curry*, the plaintiffs argue that the hybrid employees in this case are not limited by the 8-hour rule. (ECF 59 at 19-20.)

6

The plaintiffs miss the key distinction between their claims here and those raised in *Curry*. Under Title 38, the VA Secretary *may* authorize, "on a nationwide, local, or other geographic basis," additional pay to non-nurse VA employees "on the same basis as provided for nurses in section 7453 . . . ." 38 U.S.C. § 7454(b)(1). In *Curry*, the Secretary had exercised that authority and designated the hybrid-employee plaintiffs as employees entitled to receive night-premium pay under 38 U.S.C. § 7454(b)(1). *Curry*, 66 Fed. Cl. at 597. Both parties in *Curry* stipulated that the hybrid-employee plaintiffs there were eligible for both night- and weekend-premium pay on the same basis as RNs. *Id.* at 597 n.8.

The parties in this case have not entered in the record such a stipulation. In fact, the defendant moved for partial dismissal on this very point, arguing that § 7454(b)(1) was not money-mandating because the permissive language ("may") did not mandate payment, at least absent approval. (ECF 34.) The plaintiffs have not alleged that the director at the Hines facility or any other authority approved the hybrid employees at the Hines facility for additional pay under Title 38. The Court denied the defendant's motion to dismiss because the plaintiffs clarified at oral argument that the Hines plaintiffs' backpay claims for night-premium pay do not arise under Title 38 but only under Title 5. (ECF 41.) The plaintiffs have conceded that Title 38 does not apply to their claims. Accordingly, *Curry* is inapplicable, and Title 5's 8-hour rule applies.

The Court cannot know how many of the 237 individuals identified in the interrogatory response were not paid properly under Title 5. Regardless of the precise number, however, the Court determines that the plaintiffs have failed to demonstrate the requisite numerosity.

In addition to failing to show numerosity, the named Hines plaintiffs cannot meet RCFC 23's commonality requirement. Commonality requires "questions of law or fact common to the class." RCFC 23(a)(2).

The VA confirmed that the named Hines plaintiffs were entitled to night-premium pay under Title 5. (ECF 53, Ex. A at 1.) The VA reviewed its pay records for each named plaintiff: Linda Crawley, Lip Chen, Marta Elizabeth Lopez, and Evelyn Sherman. (*Id.*) Each "received night differential premium pay under Title 5 authority when paid leave was used between 6pm and 6am and the total amount of leave in the pay period is less than eight (8) hours." (*Id.*) The plaintiffs have not contested the defendant's evidence on this point. As a result, the named plaintiffs have suffered no compensable injury.

In their amended motion for class certification, the plaintiffs claim, for the first time, entitlement to unpaid Saturday premium pay. (ECF 62.) This allegation is not properly before the Court. In their reply brief, the plaintiffs claim "entitlement to an additional premium of 25% when they used 'leave with pay' instead of work on Saturdays." (ECF 59 at 17 (emphasis omitted).) The plaintiffs did not raise this claim in their complaint, which seeks only back pay for night-premium pay, without any mention of Saturday pay. The Court will not consider a newly asserted claim not presented in the complaint on a subsequent motion. *See Michels v. United States*, 72 Fed. Cl. 426, 431-32 (2006) (declining to consider claims presented in plaintiff's brief opposing a motion to dismiss where the new claims were not included in the complaint). Accordingly, the plaintiffs' claim for Saturday pay is not properly before the Court

7

and provides no basis on which the named Hines plaintiffs can support their motion for class certification.

Because the named Hines plaintiffs properly received the night-premium pay to which they were entitled under Title 5, they do not have a common question of law or fact with potential plaintiffs who were improperly paid. The Court denies the plaintiffs' motion for class certification regarding the Hines plaintiffs' claims.[6]

### C. National Class

The plaintiffs propose to certify two subclasses, based separately on the Hines and Richmond plaintiffs' claims, covering all similarly situated VA employees nationally. (*See* ECF 1, ¶ 13.) The plaintiffs, however, have failed to establish RCFC 23's commonality requirement because they have not shown that "there are questions of law or fact common to the class" or that "the United States acted or refused to act on grounds generally applicable to the class." RCFC 23(a)(2), (b)(2).

In support of their motion for class certification, the plaintiffs submit the declaration of Daniel Kowalski to support their assertion that the putative class extends throughout the VA's in-patient hospital system. (*See* ECF 62, Ex. 4.) Mr. Kowalski was employed by the VA from 1972 to 2006 in various human-resources positions. (*Id.* at 1.) To determine an opinion on whether nonpayment of night-premium pay may be replicated at the other 150 VA medical centers, he relied on the defendant's answers to the plaintiffs' interrogatories (combining Hines and Richmond employee numbers). (*Id.* at 3-4.) Mr. Kowalski formulated a rate of improper payment based on those answers and then applied that rate across the entire VA system, concluding that "the total number of claimants in the other VA Medical Centers could be 9,888 . . . or greater." (*Id.* at 4.)

Because the named Hines plaintiffs themselves were not improperly paid, as previously discussed, they cannot represent a national putative class. Given the confusion caused by the plaintiffs' interrogatory, there is no indication that there are pay discrepancies at the Hines facility, much less national or systemic discrepancies. Mr. Kowalski relied on the Hines numbers in error.

The VA confirmed that 795 RNs and LPNs were not paid the approved 14 percent pay at the Richmond facility. A current VA Management Analyst, Robert Jackson, explained that the discrepancy at the Richmond facility was caused by "personnel actions that changed employee records due to promotion, job change, and[/]or general adjustments." (ECF 53, Ex. C at 5.) When those changes were made, "the employee's premium pay code that indicated to the system that the Night Differential rate should be 14% fell off the employee record." (*Id.*)

---

[6] The Court anticipates that the defendant will move expeditiously for summary judgment on the claims of the named Hines plaintiffs.

Despite indication of errors at the Richmond facility, it does not follow that the same systemic error exists throughout the VA system.  According to the defendant's witness, Mr. Jackson, the pay discrepancy found in Richmond is individualized to certain personnel actions.  (*Id.*)  Even the plaintiffs' expert, Mr. Kowalski, in a second declaration, admitted that "[a]lthough the system is electronic and largely automated, the accuracy of pay is still dependent on designated timekeepers, [human-resources] and Payroll employees properly entering required 'codes.'"  (ECF 59, Ex. 1 at 3.)  Any attempt to assume that other VA facilities have a similar rate of improper payment is speculation.  The individualized pay discrepancies found among Richmond employees cannot be extrapolated across the VA system as attempted by Mr. Kowalski and the plaintiffs.  It is possible that there are pay errors at other VA facilities, but the Court needs more than speculation to conclude that there is a national problem.  It is the plaintiffs' burden to meet, and they have failed to do so here.

The plaintiffs also have not identified any other VA facilities where an increase in night-premium pay was approved, even though they noted that they have served the defendant with an interrogatory seeking specific information as to pay practices at other VA facilities.  (*See* ECF 59 at 9 n.2.)  Mr. Kowalski concludes that he is "unable to estimate the precise number of employees who were not properly paid a night differential of more than 10% since I have no information on the number of employees who are authorized to receive a differential of more than 10%."  (ECF 62, Ex. 4 at 5.)

Because the plaintiffs merely speculate about underpayment at other VA facilities without identifying a systemic error or even identifying other VA facilities that have authorized increased night-premium pay, the plaintiffs cannot show that there is a common question of law or fact in a national class.  On the same reasoning, they cannot show that the United States acted or refused to act on grounds generally applicable to a national class.  The plaintiffs, therefore, cannot establish a national putative class based on the Richmond plaintiffs' claims.

Because the plaintiffs have failed to establish RCFC 23's commonality requirement for a national class based on the Hines and Richmond plaintiffs' claims, the Court denies the plaintiffs' motion for certification of a national putative class.

### D.     General Schedule Employees

The plaintiffs also seek to certify a subclass consisting of general schedule employees at VA facilities.  (ECF 62 at 2.)  The plaintiffs refer to these employees as "GS-Title 5."  (*Id.*)  The VA allegedly "failed to pay night premium pay and/or Saturday premium pay when those employees used authorized annual leave, sick leave, or military training leave, instead of performing scheduled work during night and/or Saturday hours since November 23, 2012."  (*Id.*)  In their reply brief, the plaintiffs ask that class certification of this subclass be resolved when the defendant replies to the plaintiffs' outstanding interrogatory as to this subclass.  (ECF 59 at 27.)

The plaintiffs' complaint, however, sets out only two subclasses: one based on the claims of the Hines plaintiffs for hybrid employees and the other based on the claims of the Richmond plaintiffs for RNs and LPNs.  (ECF 1, ¶ 13.)  The Hines plaintiffs are employed as hybrid

employees, and the Richmond plaintiffs are employed as RNs.  (*Id.* ¶¶ 7-8.)  Further, as previously noted, the complaint does not set out a claim for Saturday premium pay.

Not only is there no named plaintiff representation for general schedule employees, but the plaintiffs may not, in a motion to certify a class, raise additional claims beyond those claims raised in their complaint.  *See Michels*, 72 Fed. Cl. at 431-32 ("The appropriate means of raising this [newly asserted] claim would have been either to have included it in plaintiff's complaint or to have filed a motion to amend the complaint pursuant to RCFC 15.").

To the extent that the "GS-Title 5" employees may be subject to the same Title 5 provisions as the Hines plaintiffs, the named Hines plaintiffs were not improperly paid and cannot represent them.  The Court, therefore, must deny the plaintiffs' attempt to certify a subclass of general schedule employees at VA facilities.

### E.     Richmond Plaintiffs

Finally, the Court considers class certification at the Richmond facility alone.  The named Richmond plaintiffs are RNs at the VA Medical Center in Richmond, Virginia.  They seek to represent other RNs and LPNs who were not paid the approved increase in the night-premium pay from 10 percent to 14 percent at the Richmond VA Medical Center and other VA facilities that have approved increased night-premium pay.  The VA has identified 795 RNs and LPNs who were not paid the increased pay at the Richmond facility.

#### 1.     Numerosity

Class certification requires that "the class is so numerous that joinder of all members is impracticable."  RCFC 23(a)(1).  To determine whether numerosity is satisfied, courts look at several factors, "including the number of class members, the location of members of the proposed class, the size of individual claims, and the nature of the action."  *Haggart v. United States*, 89 Fed. Cl. 523, 530 (2009).  This court's opt-in class approach "'resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff,'" but the class action remains procedurally distinct from joinder.  *See id.* (quoting *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992)); RCFC 20 (providing for permissive joinder of parties); *Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630, 642 n.9 (2018) ("Procedurally, RCFC 20 requires a motion to amend the complaint to join new plaintiffs . . . .").  Joinder need not be impossible to certify a class; it need only be impracticable.  *Barnes*, 68 Fed. Cl. at 495.  Joinder may be "'considered more practicable when all members of the class are from the same geographic area'" or "when class members are easily identifiable."  *Jaynes v. United States*, 69 Fed. Cl. 450, 454 (2006) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986)).

The plaintiffs argue that "[e]ach subclass is so numerous that joinder of all members is impracticable as the pool of potential members is in excess of 1,000 present and former employees."  (ECF 1, ¶ 15; *see also* ECF 62 at 3.)  The plaintiffs note that the defendant revised its interrogatory response "by providing a new list of 1,884 names and addresses of present and former employees at Hines, Illinois and Richmond, Virginia."  (ECF 62 at 6.)  The plaintiffs

10

claim that these employees were not properly paid night-premium pay. (*Id.*) This number of employees, the plaintiffs assert, "certainly satisfies the finding as to the numerosity of the putative class." (*Id.*)

The defendant argues that class certification of the potential Richmond facility plaintiffs is not appropriate because the potential plaintiffs are readily identifiable and may bring individual claims through joinder. (ECF 53 at 12.) The VA has identified 795 potential claimants who were not paid the increased night-premium pay at the Richmond facility. The defendant argues that 795 claimants are not so numerous as to make their joinder impracticable. The defendant makes no mention of the 366 Richmond RNs or LPNs receiving no differential night-premium pay that it identified in its interrogatory response. (*See* ECF 62, Ex. 5 at 4.)

The plaintiffs argue that joinder would be impracticable, which is all that is required to establish numerosity under RCFC 23(a)(1). (ECF 59 at 12.) Although the plaintiffs' analysis considers a potential national class, the Court finds the numerosity requirement met even considering the Richmond facility alone. The defendant has identified up to 1,161 (the sum of 795 and 366) Richmond RNs or LPNs improperly paid and potentially requiring notice of this suit to consider joining. RCFC 23 provides a procedure for notifying potential plaintiffs in class actions, but RCFC 20 offers no such procedure for permissive joinders. *Compare* RCFC 23 *with* RCFC 20. Even though the potential plaintiffs have been identified, the Court finds that joinder of up to 1,161 potential plaintiffs would be impracticable. *See Haggart*, 89 Fed. Cl. at 530-32 (finding the numerosity requirement met in a case involving roughly 750 identifiable landowners in a defined geographic area).

### 2. Commonality

To determine whether commonality is satisfied, courts consider three questions: (1) whether "there are questions of law or fact common to the class"; (2) whether those common questions "predominate over any questions affecting only individual members"; and (3) whether "the United States acted or refused to act on grounds generally applicable to the class." *Haggart*, 89 Fed. Cl. at 532; RCFC 23(a)(2), (b)(2)-(3).

The plaintiffs argue that there are common questions of law and fact affecting the members of each subclass. (ECF 1, ¶ 16; *see also* ECF 62 at 3.) The Richmond plaintiffs, the plaintiffs contend, share the following common legal question:

> whether the VA violated its authorizing Memoranda approving the payment of "14% off-tour pay differential for evening and night for RNs and LPNs from the current rate of 10% to 14% of base salary" (or some percentage in excess of 10%) for service at night (and contiguous hours) when members of the subclass of RNs and LPNs employed at the VA Medical Center in Richmond, Virginia performed service at night, but were paid 10% for such service since November 23, 2012 . . . .

(ECF 1, ¶ 17; *see also* ECF 53, Ex. B (the VA's authorizing Memorandum).) The plaintiff alleges that the United States "has acted or refused to act since November 23, 2012 on grounds generally applicable to each subclass by denying proper compensation to eligible opt-in members of each subclass." (ECF 1, ¶ 22.)

The defendant responds that "the 'pay issue' at the Richmond facility does not concern a question of law, but solely involves 'coding' errors that resulted in the non-payment of the 14 percent premium pay to certain employees for certain pay periods." (ECF 53 at 13.) The defendant argues that the plaintiffs have not satisfied the predominance requirement because the premium pay is coded manually by individual human operators. A VA Management Analyst has explained how the pay discrepancies occurred at the Richmond facility: "Because the 14% premium rate for LPN and RN is a deviation from the Agency standard of 10% night differential, a manual entry by [human resources] and/or payroll is required, thereby creating the opportunity for human error." (ECF 63, Ex. D at 1-2.) Although these human errors may occur, the potential pay issue, the defendant argues, "cannot be 'resolved by generalized proof.'" (ECF 53 at 15 (quoting *Jaynes*, 69 Fed. Cl. at 457).) Instead, the defendant argues, the claims can only be resolved on a case-by-case basis. (*Id.*)

The plaintiffs argue that the defendant's "abstract notion of what is 'a matter of law'" is wrong: "Every 'question of law' in such class action cases involves whether the plaintiffs and the potential members of the class qualify factually as well as legally for the remedy sought by the class to repair the defendant's alleged violations of law . . . ." (ECF 59 at 11.) The Court understands this argument to mean that the common question of law is whether the plaintiffs were eligible for and not paid increased pay mandated by the statute. The VA has identified those individuals at the Richmond facility.

On the one hand, the plaintiffs have not adequately addressed the predominance requirement. As noted in *Barnes*, although individual class members do not need to be identically situated, "the Supreme Court has indicated that the predominance component is 'far more demanding' [than the other commonality requirements] and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Barnes*, 68 Fed. Cl. at 496 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). The plaintiffs argue that "Mr. Jackson already has clarified and resolved 'by generalized proof' the actual, not potential, 'pay issue.'" (ECF 59 at 14 (emphasis omitted).) According to Mr. Jackson in his declaration, pay discrepancies were caused by personnel actions. (ECF 53, Ex. C at 5.) The plaintiffs characterize the discrepancies as a "systemic failure" and argue that liability can be easily calculated. (ECF 59 at 14, 16.) It is an open question, however, whether resolution of the proposed class's claims require generalized or individualized proof. Are the pay errors systemic or personal to each identified employee? Does the common question—of whether the plaintiffs were improperly paid—predominate any potential differences in personnel actions causing error? The plaintiffs must provide more analysis to meet their burden of showing commonality.

On the other hand, the defendant's argument on the commonality issue is not sufficiently persuasive to enable the Court to reject with finality the plaintiffs' motion. The plaintiffs have alleged enough factors to support class status, if they can meet their burden. The defendant's

argument that each putative Richmond class member who did not receive night-premium pay was subjected to an individualized error is insufficient. Certain issues may demand too individualized a determination to support class status, but when putative class members are repeatedly harmed following personnel changes, as the defendant asserts, a systemic issue capable of class-wide resolution may exist. Such a systemic issue may well be applicable to all, or at least many, of those injured. That general applicability can support class status. The fact that thereafter the calculation of damages for each class member would be determined on an individualized basis is itself insufficient to defeat class status. *See Horvath*, 149 Fed. Cl. at 748. At a minimum, unlike the other subclasses proposed by the plaintiffs, this one has facial plausibility, although the plaintiffs have failed to show commonality on the record before the Court.

### 3. Typicality

To establish typicality, the plaintiffs must show that their "claims or defenses . . . are typical of the claims or defenses of the class." RCFC 23(a)(3). The plaintiffs claim that their claims are typical of the potential class because the harm "was caused by the same systemic policy of the VA since November 23, 2012 . . . when the VA failed to pay officially authorized 14% night premium pay to the subclass of RNs and LPNs at Richmond, Virginia for the performance of service during nighttime hours." (ECF 1, ¶ 18.) Neither party makes any arguments on this point, but because it is the plaintiffs' burden, they must do more to demonstrate typicality. By not addressing the requirement of typicality, the plaintiffs have failed to carry their burden on the issue.

### 4. Adequacy

To determine whether the adequacy requirement is satisfied, courts consider the adequacy of class counsel and ensure that class members do not "'have interests that are "antagonistic" to one another.'" *Barnes*, 68 Fed. Cl. at 499 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)). The plaintiffs assert that they "do not have interests antagonistic to, or in conflict with, the members of each subclass" (ECF 1, ¶ 19), "will fairly and adequately protect the interests of the members of each subclass" (*id.* ¶ 20), and "have retained competent counsel experienced in class action litigation and in litigation involving federal pay statutes." (*Id.* ¶ 21.) As with typicality, neither party addresses adequacy and, in the absence of any explanation by the plaintiffs of how they satisfy this requirement, the plaintiffs have again failed to carry their burden.

### 5. Superiority

To establish superiority, the plaintiffs must show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). Courts weigh "any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed. Cl. at 499.

The parties dispute whether a class action is superior to other methods of adjudication. The plaintiffs simply assert that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (ECF 1, ¶ 37; ECF 62 at 3.) The defendant argues that a class action is inappropriate because the plaintiffs' claims require individual proof of damages and joinder is available. (ECF 53 at 12-13.) Although the plaintiffs would certainly have individualized damages, "differences in individual damages are not determinative of class certification." *See Haggart*, 89 Fed. Cl. at 536; *see also Barnes*, 68 Fed. Cl. at 498 ("Were such considerations [individualized damage determinations] determinative, there scarcely would be a case that would qualify for class status in this court or any other . . . ."). According to the plaintiffs, those damages would not be difficult to calculate: "the agency can easily determine its liability to each class member by virtue of their time, attendance, and recorded pay rates which are embedded in 'the payroll system.'" (ECF 59 at 16.)

The Court finds that, if the plaintiffs can satisfy their burden on the other elements of RCFC 23, a class action would be a superior method for resolving the claims of the Richmond plaintiffs.

### 6. Conclusion

The plaintiffs must do more than assert that RCFC 23's requirements are met. They bear the burden to establish that all those requirements are met. *Mercier*, 138 Fed. Cl. at 270. Instead of relying on quotes from other cases without analysis and on general assertions that the requirements are met, the plaintiffs must apply the facts of their own case to *each* RCFC 23 requirement. The Court agrees with the plaintiffs that some requirements are met, but their analysis is not robust enough for the Court to analyze the merits on both sides. In failing to provide an adequate RCFC 23 analysis, the plaintiffs have not met their burden. Accordingly, the Court denies, without prejudice, the plaintiffs' motion as to the potential putative class at the Richmond facility.[7]

## III. CONCLUSION

The plaintiffs have failed to meet their burden under RCFC 23 for class certification. Accordingly, the plaintiffs' amended motion for class certification (ECF 62) is **DENIED**.

Limited to potential plaintiffs at the Richmond facility, the plaintiffs' motion to certify a class based on the Richmond plaintiffs' claim is **DENIED without prejudice**. The plaintiffs may move again for class certification of potential Richmond facility plaintiffs by no later than **February 8, 2021**. If the plaintiffs choose to do so, they must analyze each of RCFC 23's

---

[7] The plaintiffs based their RCFC 23 analysis on the Hines and Richmond plaintiffs' combined claims. Because the Court denies certification of the proposed class of Hines plaintiffs and of the proposed national class, the Court denies the Richmond plaintiffs' class certification without prejudice so that the Richmond plaintiffs may move again for class certification based on the Richmond facility alone.

14

requirements with particularity, considering the facts and circumstances of this case. The plaintiffs' motion for (1) approval of a postcard providing notice to putative class members; (2) approval of the official class notice; (3) appointment of Ira M. Lechner as class counsel; and (4) appointment of Epiq Class Actions & Claims Solutions, Inc. as class-action administrator, limited to the Richmond plaintiffs, is **DENIED without prejudice**.

Regarding potential classes consisting of (1) hybrid employees at the Hines facility, (2) hybrid employees, RNs, and LPNs nationally, and (3) general schedule employees, the plaintiffs' motion for class certification is **DENIED**. With respect to these classes, the plaintiffs' motion for (1) approval of a postcard providing notice to putative class members; (2) approval of the official class notice; (3) appointment of Ira M. Lechner as class counsel; and (4) appointment of Epiq Class Actions & Claims Solutions, Inc. as class-action administrator is **DENIED**.

The plaintiffs' motion for oral argument (ECF 64) is **DENIED**.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**